Submit order.

JOSEPH TENNER, PLAINTIFF, v. HERBERT KRUTT-SCHNITT, MAYOR OF THE TOWN OF IRVINGTON, N. J., AND THE BOARD OF COMMISSIONERS OF THE TOWN OF IRVINGTON, N. J., DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 19, 1951.

*Messrs. Margolis and Margolis*, attorney for the plaintiff.

*Mr. Matthew Krafte*, attorney for the defendants.

COLIE, J. S. C. By this action the plaintiff seeks to be reinstated as managing agent of the emergency housing units of the Town of Irvington and seeks a judgment of this court compelling the defendants to pay to plaintiff a sum equal to the loss of his salary, wages and remuneration as such managing agent from June 30, 1950, until restored to said position.

The fact is that having entered into a contract with the Administrator of Public Housing and Development Authority and the Department of Economic Development of the State of New Jersey, the Town of Irvington on December 24, 1946, enacted a resolution by which Commissioner Percy A. Miller was designated coordinator on behalf of the town with the Administrator of Public Housing and Development Authority to coordinate activities respecting emergency housing units to be constructed in the town. The said resolution "further resolved that Commissioner Edward J. McKenna, shall have jurisdiction of all matters involving the Town of Irvington, growing out of said contracts entered into by the town with said Administrator, or to be entered into; also he shall have jurisdiction to designate person or persons to act for the town in a ministerial way, as such action is required

under said contracts." Thereafter, Joseph Tenner, by resolution, was appointed manager of veterans' housing units in the town. On February 24, 1948, a resolution was passed authorizing the opening of a bank account for receipts from the housing project and providing for the withdrawal of funds thereafter upon the signature of any of the three persons named therein who were Herbert Kruttschnitt, Mayor, Edward J. McKenna, Director of the Department of Parks and Public Property and Joseph Tenner. On April 27, 1948, a resolution was passed, designating Joseph Tenner as managing agent of the emergency housing units in the Town of Irvington and authorizing him to collect rents, deposit and withdraw the same for the management, operation and maintenance of the project. From the time of Mr. Tenner's appointment by resolution in March, 1947, he received as remuneration five per cent of the rents collected. Somewhat later he was appointed by Commissioner McKenna as maintenance man for the project at an additional salary of $147 per month. That funds were withdrawn from the account opened in accordance with the resolution of February 24, 1948, is not disputed and two checks are in evidence to that effect. Thus matters continued until some time in 1950 when the emergency housing units were taken from the Department of Parks and Public Property and were placed in the Department of Revenue and Finance of which Herbert Kruttschnitt, the mayor, was director. On June 28, 1950, the mayor directed a letter to Mr. Tenner advising him that his services as managing agent of emergency housing units would not be required after June 30, 1950. There is no dispute that the compensation which Tenner was to receive under his appointment by Commissioner McKenna was arranged for by Commissioner McKenna and Mr. Tenner and was approved by the State. It is also undisputed that there was no resolution or ordinance with reference to the payment of the compensation in the form of a percentage of rents collected nor any resolution or ordinance as to the payment of $147 per month for maintenance supervision.

Mr. Tenner's designation or appointment as managing agent of the emergency housing units was for no fixed period. The position was never abolished and it is undisputed that after June 30, 1950, the position of managing agent was filled by two other persons.

At the trial of this case, David S. Laurie, Chief of Veterans' Housing for the Northern District of New Jersey, testified that the Town of Irvington receives 25 per cent of the gross rents received, less utilities, and that said sum is paid to the municipality in lieu of taxes; that the five per cent which is paid for management of the veterans' housing units is not paid out of the above 25 per cent of the gross rents, less utilities, which the Town of Irvington received in lieu of taxes.

The gist of the plaintiff's argument is that *R. S.* 55:14G–1, *et seq.*, was enacted by the Legislature to cope with an acute shortage of housing accommodations for veterans of World War II, and the argument is that the emergency described in the first section of the act "requires the temporary suspension of various normal restrictions, prohibitions, limitations, and procedures, in order that immediate relief from this condition may be provided; that the acquisition, construction, management, operation, and disposition of such emergency housing and the real and personal property and other facilities necessary, incidental, or appurtenant thereto is a public use for which public money may be spent, and property acquired." The plaintiff then points to section 17 of the act, providing "Any municipality, by resolution of its governing body, is hereby authorized and empowered to enter into any contract which the administrator is authorized by this act to execute, and any such municipality is hereby given all powers necessary, convenient or desirable in order to carry out and perform any and all provisions of any such contract * * *." The plaintiff contends that the appointment of a managing agent for the veterans' housing units is, in the terms of the statute, a convenient power and that by virtue of the provisions of section 17, having found it con-

venient to appoint a managing agent, the municipality could do so by resolution. The plaintiff's argument is that the Legislature having declared the existence of an emergency and having provided by statute for emergency housing units and given to the municipality "all powers necessary, convenient or desirable in order to carry out and perform any and all provisions of any such contract" with the administrator, that it was thereby given authority to appoint Mr. Tenner by resolution. The plaintiff further contends that since Mr. Tenner is a veteran of World Wars I and II and was honorably discharged from armed service, by virtue of *R. S.* 38:16–1 *et seq.*, he was protected from removal except for good cause shown, after a fair and impartial hearing.

The protection which, as an honorably discharged veteran, the plaintiff would be entitled to under this statute is accorded to him if, and only if, he holds any employment, position or office, the term of which is not fixed by law. It therefore becomes necessary to determine whether he held such an employment, position or office and this question brings us to the nub of the case. Under *R. S.* 40:48–1, the Home Rule Act, the statute under which the Town of Irvington functions, it is provided in Article 1, section 3, that the governing body of the municipality may make ordinances to "prescribe and define, except as otherwise provided by law, the duties and terms of office or employment, of all officers and employees; and to provide for the employment and compensation of such officials and employees, in addition to those provided for by statute, as may be deemed necessary for the efficient conduct of the affairs of the municipality." In *Handlon v. Town of Belleville,* 4 *N. J.* 99 (1950) it was settled that under *R. S.* 40:48–1 "a municipal office or position, if not created by statute, can come into being only by ordinance of the local governing body. The sense of the statute is that, because the creation of offices and positions involves an increase of the financial burden of local government, the power is exercisable only by ordinance, a deliberative process requiring notice to the public."

Plaintiff's argument is that the provisions of *R. S.* 55:14G–1, more particularly section 17 thereof, giving it "all powers necessary, convenient or desirable in order to carry out and perform any and all provisions of any such contract," acts in some mysterious manner to abrogate, during the pendency of the emergency with which *R. S.* 55:14G–1 *et seq.* was dealing, that provision of the Home Rule Act which has been quoted above and which requires that all officers and employees and the compensation to be paid to them be by ordinance. The argument is that so far as anything connected with emergency housing units is concerned, the municipality is by virtue of section 17 of the act relative thereto, empowered to act by resolution despite the fact that for many years the Legislature has specifically provided that appointment to a municipal office or position must be by ordinance. This court is unable to read any such wide grant of power into *R. S.* 55:14G–17. It seems clear that that section gives to the municipality power by resolution to enter into a contract with the administrator. In that respect and to that extent only is the municipality empowered to act by resolution of its governing body. The fact is that the power to contract by virtue of a resolution does not carry with it the right to appoint to a position and provide for compensation to the holder thereof by resolution in direct conflict with the provisions of *R. S.* 40:48–1. The plaintiff never held any employment, position or office in the municipality to which he had been legally appointed so as to accord to him the protection of *R. S.* 38:16–1.

The fact that the subsequent resolution authorizing the plaintiff to collect the funds, deposit and withdraw them from a bank account cannot operate in such manner so as to validate an appointment or designation otherwise illegal.

Judgment will be entered for the defendants.